IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
LASHUNDRA ROGERS,            )
individually and as next     )
friend of A.B., a minor,     )
                             )
        Plaintiff,           )      CIVIL ACTION NO.
                             )
    v.                       )      2:21cv455-MHT
                             )           (WO)
PIKE ROAD BOARD OF           )
EDUCATION et al.,            )
                             )
        Defendants.          )
```

OPINION

Following a school-bus assault on her daughter, Lashundra Rogers filed this lawsuit, naming as defendants three school officials--Turkessia McGaskill, David Sikes, and Charles Ledbetter--in their individual and official capacities. She charges them with violating the Fourteenth Amendment and seeks relief under 42 U.S.C. § 1983.[1] Jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

_____

    1. Rogers brings the § 1983 claim on only her own behalf. She also brings five claims on behalf of her

The school officials now seek to dismiss Rogers's complaint to the extent it lies against them. For the reasons discussed below, they will be dismissed in both their individual and official capacities.

## I. MOTION-TO-DISMISS STANDARD

The school officials seek dismissal, in part, on qualified-immunity grounds. At this stage, "the qualified immunity inquiry and the [Fed.R.Civ.P.] 12(b)(6) standard become intertwined." *Ledea v. Metro-Dade Cnty. Police Dep't*, 681 Fed. App'x 728, 729 (11th Cir. 2017) (internal quotation marks omitted). The qualified-immunity inquiry is explained in more detail later.

In any event, in considering the school officials' motion to dismiss, the court must accept Rogers's allegations as true, *see Hishon v. King & Spalding*, 467

---

daughter, A.B., under Title IX, 20 U.S.C. §§ 1681-1688, against defendant Pike Road Board of Education. These claims are not before the court at this time.

U.S. 69, 73 (1984), and construe the complaint in her favor, *see Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). The court may also draw "reasonable inferences" from the facts alleged in the complaint. *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).


## II. BACKGROUND

The facts in this case are upsetting and are recounted here as alleged, in relevant part, in the complaint. In October 2019, Rogers's daughter, A.B., was a 14-year-old student at Pike Road High School. Over a series of three days, S.H., a 17-year-old student, assaulted A.B. while riding the school bus.

Rogers and her husband first received notice that an incident had occurred on the last of those three days, when they were contacted by the school. That day, Rogers and her husband arrived at the school and met with principal Sikes and assistant principal McGaskill, as well as a school guidance counselor and state and county officials. Rogers and her husband were not permitted to

3

be in the room where A.B. was writing her statement about the incident; Rogers has received only partial descriptions of this statement from McGaskill.

Someone informed Rogers and her husband that a student "had touched A.B. inappropriately" on the school bus; that the bus driver had witnessed the contact and reported the incident to the school; and that there was video footage of the touching from the bus camera.[2] However, Rogers and her husband were not permitted to view the footage because other minors appeared on the tape. A.B. was too rattled to share with Rogers the details of the school-bus assault. At this time, Rogers believed that there had been only one school-bus incident in which S.H. had touched A.B.

---

2. The complaint does not allege that the individuals who conveyed this information were the defendant school officials nor even members of the school staff. Although not dispositive, because there were others who met with Rogers that day--including state and county officials--the court makes no assumptions as to the identity of these individuals.

**4**

Answering a query from Rogers that day, McGaskill told her that A.B. did not need a hospital examination. Rogers and her husband did not seek medical treatment for A.B. That same day, the school-bus incident was identified as a "Sex Offense | Sexual Contact | Compulsion | No Consent" under Ala. Code § 13A-6-66 on the incident report prepared by a county official.

The next day, A.B. again rode the bus to school, where other students harassed and taunted her in response to S.H.'s having been reported the previous day. That afternoon, Rogers relayed this retaliatory behavior to McGaskill and asked her to protect A.B. and to prevent future harassment. McGaskill told Rogers that she could not do anything about the misconduct because she did not witness it. Afterward, A.B. stopped riding the bus but was similarly harassed by students at school over the next six weeks. She eventually withdrew from the school.

Sexual-abuse charges were brought against S.H. in county juvenile court. Before the hearing, in September 2020, a county prosecutor showed Rogers and her husband

clips of A.B.'s assault from the bus camera.  At that meeting, Rogers and her husband learned for the first time that S.H. had inappropriately touched A.B. for three consecutive days rather than one.  The footage also showed S.H. choking A.B.  Later, Rogers learned from her daughter that S.H. had inserted his fingers into A.B.'s vagina during at least one of the school-bus incidents that school officials described as "inappropriate touching."

### III. DISCUSSION

The school officials argue that Rogers's charge against them should be dismissed based on their qualified immunity.  For the reasons stated below, the court agrees and additionally finds that the official-capacity claim against them must be dismissed for lack of standing.

### A. Qualified Immunity

Qualified immunity shields "government officials 'from liability for civil damages insofar as their

conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The doctrine applies to individual-capacity (rather than official-capacity) claims.  *See Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1294 (11th Cir. 2003).

Here, in invoking qualified immunity, McGaskill, Sikes, and Ledbetter bear the initial burden of showing that they "act[ed] within the scope of [their] discretionary authority when the challenged action occurred." *Patel v. City of Madison*, 959 F.3d 1330, 1338 (11th Cir. 2020).  Their discretionary authority "include[s] all actions ... that (1) 'were undertaken pursuant to the performance of [their] duties,' and (2) were 'within the scope of [their] authority.'" *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).  If they establish that they acted within their discretionary

authority, "the burden shifts to [Rogers] to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

There is no dispute that the school officials are government officials and acted within the scope of their discretionary authority.  Rogers thus bears the burden of demonstrating that qualified immunity does not apply. She must show that the school officials both violated her constitutional rights and that they did so at a time when clearly established law rendered their conduct unconstitutional. *See Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013).

The court can consider these two prongs in any order "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.  Here, the court begins--and ultimately concludes--its qualified-immunity inquiry by asking whether there was clearly established law, at the time the school officials acted, as to the constitutional violation that Rogers claims.  Because there was no such clearly established law, the court need

not reach the question of whether a violation in fact is established.  *See Maddox*, 727 F.3d at 1121 ("[W]e are afforded the flexibility to determine that the right allegedly violated was not clearly established without deciding whether a constitutional violation occurred at all.").

Rogers argues that McGaskill and Sikes violated the Fourteenth Amendment by "unlawfully ... depriv[ing] [her] of and withhold[ing] from her critical information about her daughter's sexual assault" and thereby interfering with constitutional interests she enjoys as a parent. Second Amended Complaint (Doc. 40) at ¶ 51; *see id.* at ¶¶ 49, 52.  In later filings, she specifies that they violated her "substantive due process right arising under the fourteenth amendment's liberty clause[,] which protects her from unjustified state interference with her parent[al] rights, as A.B.'s mother."[3]  Pl.'s Response to

_____

3. Given Rogers's focus on her parental "right to liberty," "right to privacy within the familial relationship," and "right to due process," Second Amended Complaint (Doc. 40) at ¶ 51, the court understands that

Individual Defs.' Motion to Dismiss (Doc. 48) at 13; *see id*. at 11-12 ("[Defendants] unjustifiably interfered with [Rogers's] right to rear her daughter by intentionally and unlawfully deciding to withhold from and deprive [her] of critical information and details ... about the sexual harassment and retaliation A.B. suffered on the school bus ... which prevented [Rogers] from having necessary information upon which to base important decisions about A.B.'s immediate and future medical care, mental health care, and supportive measures or remedies in violation of her clearly established constitutional rights as A.B.'s parent.").[4]

---

she pled only a substantive-due-process claim against the school officials in the operative complaint. *But cf*. Defs.' Motion to Dismiss (Doc. 42) at 9-10, 17-18.

4. Rogers briefly alleges that the school officials implemented a "custom, policy, or practice" of denying the right to comprehensive parental notification. Second Amended Complaint (Doc. 40) at ¶ 52. But the complaint lacks specific factual allegations as to the existence of such a policy that would support this conclusory claim. The court finds that she has not pled a separate § 1983 claim as to a custom, policy, or practice.

"'The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "A right may be clearly established for qualified immunity purposes in one of three ways: '(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that

---

The operative complaint also states that the school officials "deprive[d] [Rogers] of critical information and details about the ... retaliation A.B. suffered on the school bus on or about" the day she was informed about A.B.'s assault. *Id*. at ¶ 52. But the complaint does not allege any retaliation on the bus that day--and even in the following days (until A.B. stopped taking the bus), she does not allege that the school officials had any information about retaliation on the bus that they withheld from her. *See id*. at ¶¶ 14-20. Indeed, the complaint suggests that Rogers and her family were the parties telling defendant McGaskill about retaliatory conduct on the bus and at school. *See id*. at ¶¶ 15, 17-20. The court finds that Rogers has not pled a separate § 1983 claim as to retaliation.

clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Maddox*, 727 F.3d at 1121 (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291-92 (11th Cir. 2009)).

Even taking all facts alleged in the complaint as true, Rogers does not carry her burden of showing that the claimed violation interferes with a clearly established right under any of the three available pathways. First, she proffers no case law with indistinguishable facts that clearly establishes a constitutional right for parents to be notified immediately about the comprehensive details of their child's assault.[5] *See* Pl.'s Response (Doc. 48) at 19

---

5. Rogers "cannot carry [her] burden of proving the law to be clearly established by stating constitutional rights in general terms," *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996), as with a wide-ranging "right ... to be free from unjustified government interference with her right to rear her daughter," Pl.'s Response (Doc. 48) at 11. *See Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) ("The inquiry whether a

(presenting case law with "similar but *nevertheless different* facts" (emphasis added)).

Second, she does not identify any broad statement of principle that clearly establishes a constitutional right to such comprehensive parental notification. Under this pathway, a plaintiff "may 'point to a broader, clearly established principle [that] should control the novel facts [of the] situation.'" *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (alterations in original)). Rogers cites *Arnold v. Board of Education of Escambia County*, 880 F.2d 305 (11th Cir. 1989), to suggest a "constitutionally-protected right to be free from unwarranted governmental intrusion and interference with her familial relations," Pl.'s Response (Doc. 48) at 19, but--even if *Arnold* stands for that proposition--it is too generalized to clearly establish

_____

federal right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" (quoting *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc))).

a right to comprehensive parental notification on the instant facts.  So too with *Hope v. Pelzer*, 536 U.S. 730 (2002), which she cites to suggest that a constitutional violation lies when state actors "unnecessarily place[] the health and/or safety" of individuals "at risk," Pl.'s Response (Doc. 48) at 19.  Neither case--one, *Arnold*, dealing with school officials coercing a minor's abortion and the other, *Hope*, with prison officials using a hitching post--establishes a principle with such "'obvious clarity' by the case law so that 'every objectively reasonable [public-school] official facing the circumstances would know that the official's conduct ... violate[d] federal law'" by not immediately disclosing the full details of a student's school-bus assault to the student's parent.  *Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012) (quoting *Vinyard*, 311 F.3d at 1351).[6]

---

    6.  Nor do the cases Rogers cites elsewhere support a constitutional violation where school officials offered her some--but not all--of the information they possessed about A.B.'s assault.  Whatever infringement on parental

Third, she does not identify any conduct by defendants so egregious as to disclose on its face that a constitutional right was clearly violated.   Contrary to her contentions, "the unlawfulness of [the school officials'] conduct" is not "blatantly apparent."  Pl.'s Response (Doc. 48) at 20.   School officials who tell parents that their child was assaulted on a school bus without sharing the full nature and circumstances of the assault do not thereby fall within the "'narrow'" pathway reserved for conduct that "'so obviously violate[s] [a] constitution[al]'" provision that "'prior case law is unnecessary.'"   *Loftus*, 690 F.3d at 1205 (quoting *Terrell*, 668 F.3d at 1255, 1257).   The school officials are "entitled to qualified immunity because the law was not clearly established that [their] actions were so conscience shocking as to violate [Rogers's] liberty

---

prerogatives comes from their lack of candor with Rogers, it falls well short of the constitutional stakes of petitions for visitation, as in *Troxel v. Granville*, 530 U.S. 57 (2000), or termination of parental rights, as in *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996), and *Santosky v. Kramer*, 455 U.S. 745 (1982).

interest in the care, custody, and management" of her daughter. *Maddox*, 727 F.3d at 1121.

On the facts Rogers alleges, there is no clearly established constitutional right to comprehensive parental notification. "Under the circumstances, no clearly established right to family privacy has been shown to have been violated by the conduct of Defendants. This conclusion is so even if the investigation [and notification] ... procedures were not 'textbook perfect.'" *Foy v. Holston*, 94 F.3d 1528, 1537 (11th Cir. 1996) (quoting *Manzano v. S.D. Dep't of Soc. Servs.*, 60 F.3d 505, 513 (8th Cir. 1995)). Indeed, Rogers "cites no decision of the Supreme Court," the Eleventh Circuit, or the Supreme Court of Alabama "that would have provided [the school officials] notice that [their] conduct violated [her] rights" under the Fourteenth Amendment--and Rogers "fails to explain how [the school officials'] conduct otherwise violated the Constitution." *Loftus*, 690 F.3d at 1205. Because there was no clearly established constitutional right to

comprehensive parental notification as to A.B.'s school-bus assault, Rogers cannot carry her burden under the two-prong qualified-immunity inquiry. Accordingly, the court finds that school officials McGaskill and Sikes are entitled to qualified immunity as to the individual-capacity claim against them.[7]

As to Ledbetter, the superintendent of Pike Road's school system, Rogers's complaint is vague as to why he

_____

7. Though the court dismisses Rogers's charge against McGaskill and Sikes, it does not decide whether a student denied access to medical care or forced out of school by retaliation may have a § 1983 claim in that student's own right for a constitutional violation. The court is troubled by the failures to ensure that A.B. received appropriate post-assault medical care and to protect her from harm more generally, while also cognizant that case law may foreclose certain avenues of constitutional relief, even had A.B. pursued them (which she did not). *See Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 569 (11th Cir. 1997) ("[S]chool attendance laws alone are not ... sufficient to give rise to an affirmative duty of protection .... By mandating school attendance, the state simply does not restrict a student's liberty in the same sense that it does when it incarcerates prisoners or when it commits mental patients involuntarily. Absent that type of restraint, there can be no concomitant duty to provide for the student's safety and general well-being." (internal quotation marks omitted)).

is charged and he is absent from all factual allegations, with the exception of a single mention in a mass list of all defendants. Without alleging any specific facts to support the proposition, the complaint suggests that he was responsible for some policy that interfered with Rogers's claimed right to comprehensive parental notification. Regardless, to the extent that Rogers may have adequately pled a charge against him, Ledbetter enjoys qualified immunity in his individual capacity for the same reasons as do McGaskill and Sikes.

## B. Prospective Injunctive Relief

That leaves Rogers's claim against the three school officials in their official capacities under § 1983. She seeks to enjoin them "from implementing any policy, custom, or practice *in the future* which deprives any parent of any student in the Pike Road School System of critical information and details of any sexual assault upon said parent's child." Second Amended Complaint (Doc. 40) at § X.C (emphasis added); *see id*. at ¶¶ 5-7.

The court is obliged to determine whether Rogers has Article III standing, even where no party has raised the issue, *see Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005), including whether Rogers's claimed injury is likely redressable by a decision in her favor, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Here, Rogers's daughter withdrew from Pike Road High School, and Rogers nowhere suggests that A.B. will be subject to the school officials' authority in the future, much less that the complained-of conduct will recur. *See* Second Amended Complaint (Doc. 40) at ¶ 20. Nor has Rogers alleged any other facts (or sought to bring any class claims) sufficient to justify the blanket prospective injunctive relief she seeks.

To the extent A.B. is no longer under the school officials' authority, Rogers "currently has no legally protected interest" under the Fourteenth Amendment and the court's "entry of prospective injunctive relief ... would therefore not redress any *future* harm [she] might suffer." *Arnold v. Martin*, 449 F.3d 1338, 1341 (11th

Cir. 2006).   The court cannot "fashion an injunctive order to remedy *future* harm because [Rogers] has not shown that she will likely suffer such harm."   *Id*. at 1342.   Because Rogers's alleged retrospective injuries are not redressable by prospective injunctive relief, the court must dismiss her official-capacity claim against all three school officials for lack of standing.

Of course, if this construction of her § 1983 claim is in error, Rogers may ask the court to reconsider.

\* \* \*

The court stresses that it is not categorically stating that a school official's withholding of information from a parent could never, in any circumstance, give rise to a constitutional violation. So too, there may be certain school investigations where parents ought not be notified at all.   *Cf. Arnold*, 880 F.2d at 314 ("[W]e are not ... constitutionally mandating that counselors notify the parents of a minor who receives counseling regarding pregnancy.").   In any event, on the record now before it, the court holds that

Rogers's claim against the three school officials must be dismissed in full on qualified-immunity and for lack-of-standing grounds.

An appropriate judgment will be entered.

DONE, this the 29th day of September, 2022.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE